UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-10030-CR-KING/BANDSTRA

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

EDUARDO FERNANDEZ VIERA,
DOLIS JORGE PANDO CARMENATE,
RAUDEL RUBIO, and
LAZARO ALBERTO SOLINO HERNANDEZ,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant's [Raudel Rubio's] Amended Motion to Dismiss Indictment Due to Pre-Indictment Delay and/or Violation of the Compulsory Process Clause or Alternatively to Compel the Government to Produce Witnesses (D.E. 41) filed on August 5, 2008.[1]  On June 24, 2008, defendant's motion was referred to the undersigned for appropriate proceedings by the Honorable James Lawrence King pursuant to 28 U.S.C. §636(b).  Accordingly, the undersigned conducted a hearing on this motion on August 5, 2008. Following careful review of the pleadings, the Court file and applicable law, and in consideration of oral argument of the parties, the undersigned recommends that this motion be DENIED for reasons explained below.

---

[1] Defendant Rubio filed his original motion to dismiss for pre-indictment delay on June 6, 2008 (D.E. 34).  Defendant then amended his motion on August 8, 2008; and co-defendant Eduardo Fernandez Viera moved to adopt this motion on July 10, 2008. The undersigned finds that both Rubio and Viera have identical standing to bring this motion so that Viera's motion to adopt is GRANTED.  This Report and Recommendation addresses all issues raised in the amended motion to dismiss.

## INTRODUCTION

On May 9, 2008, defendants Eduardo Fernandez Viera, Raudel Rubio, and two co-defendants, were indicted in this district and charged with a conspiracy to encourage and induce undocumented aliens to enter into the United States (Count 1); and inducing 34 aliens to illegally come to and enter the United States (Counts 2-25), in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and (iv). The indictment identifies thirty-four (34) Cuban aliens allegedly induced to illegally enter the United States; and the government proffers that these persons were aboard two vessels being operated by defendants which were apprehended by the United States Customs and Border Patrol ("CBP") and the United States Coast Guard on October 3, 2007.

The government proffers further facts relevant to events preceding and following defendants' apprehension. Specifically, the government proffers that defendants' vessels were first located in the early morning hours of October 3, 2007 by CBP surveillance aircraft approximately 50 miles southeast of Islamorada traveling north towards Florida without running lights. When approached, defendants' two vessels separated and reversed direction away from United States. Following a chase, CBP officials interdicted one vessel being operated by Eduardo Fernandez Viera ("Viera") and co-defendant Dolis Jorge Pando Carmenate ("Carmenate"), occupied by seventeen (17) undocumented Cuban nationals. The government further proffers that Viera and Carmenate admitted that they intended to bring these persons into the Untied States; and later called for assistance from Raudel Rubio ("Rubio") and Lazaro Alberto Solino Hernandez ("Hernandez") who

then rendezvoused with Viera and Carmenate near Anguilla Cay, Bahamas, and took seventeen (17) of the undocumented aliens aboard their vessel. Rubio and Hernandez were interviewed and stated that they were fishing aboard a borrowed vessel when they encountered approximately fifteen (15) undocumented Cubans waiving a red flag and in need of assistance. Rubio and Hernandez admit to assisting them by bringing them aboard their vessel but deny any intent to bring them into the United States.

Following their apprehension, each of the Cuban nationals were taken aboard a Coast Guard cutter and were "screened" by Customs officials for possible asylum claims. During this screening process, which occurred on October 3 and 4, 2007, Customs officials asked each Cuban national for basic background information (name, address, marital status, education, etc.), any previous attempts to enter the United States, and whether they had ever applied for a United States visa. Customs officials recorded each person's responses on an "ASPO Interview Sheet" signed by each Cuban national. One person, Yaneisy Fernandez Rangel ("Rangel") stated that "their rustic SIP vessel struck a reef and began to sink before being saved by [a] big motorboat by chance." This, too, was recorded by Customs officials in a notation on the bottom of Rangel's interview sheet.

A few days later, all thirty-four (34) Cuban nationals including Rangel were repatriated to Cuba pursuant to executive order which, according to the government, "orders the immediate repatriation of undocumented aliens interdicted at sea." Gov.'t resp., pg. 4. All four defendants were initially taken into administrative custody, and transferred to a detention center for further investigation. All four defendants were subsequently indicted, on May 12, 2008, just over seven months after their interdiction at

3

sea.

## ARGUMENT[2]

Defendants move for the dismissal of the indictment pursuant to the Fifth and Sixth Amendments to the United States Constitution due to the seven month "delay" between their initial apprehension at sea and the return of the indictment.  Essentially, defendants argue that the government's repatriation of the 34 undocumented Cuban aliens aboard their vessels prevented defendants from interviewing them as potential defense witnesses in the case.  Defendants note, in particular, the statement allegedly made by Yaneisy Rangel, recorded by Customs officials on her interview sheet, concerning her leaking vessel and a rescue at sea by one of defendants' vessels.[3]  Defendants surmise that one or more Cuban aliens, in addition to Rangel, may have made similar statements which would be material and relevant to a "rescue at sea" defense.

This Court has recently considered this same issue in *United States v. Sosa, et al.*, Case No. 08-10024-CR-King, now pending before this Court.  In that case, two

---

[2]The undersigned notes that there were no witnesses were called by either the government or as to date defendants at the hearing conducted on August 5, 2008.  The parties have stipulated as to the date of their apprehension at sea (October 3, 2007), the date of the indictment (May 9, 2008) and the accuracy of Rangel's statement about being saved at sea.  The parties further stipulate that no defendant was immediately arrested and charged with alien smuggling.  Rather, all four defendants were initially transferred to an immigration detention center in Florida for administrative proceedings by United States immigration officials and further investigation of possible criminal charges.

[3]The specific words recorded on Rangel's interview sheet are:
"She said their rustic SIP vessel struck reef and began to sink.  Saved by big motorboat by <u>chance</u>." (Emphasis in original).

defendants, Duniesky Lau Sosa and Misael Velasquez Molina, were stopped at sea aboard a "go fast" vessel on which twenty-four (24) undocumented Cuban aliens were being transported by Sosa and Molina to the United States. There, as here, the Cuban alien's were repatriated to Cuba pursuant to United States immigration policy before Sosa and Molina were indicted for alien smuggling some eight months after interdiction at sea. There, as here, at least one of the Cuban aliens stated that they were picked up by at sea after their vessel was taking on water.

The Court, on the findings and recommendation of the undersigned, found that the eight month "delay" between apprehension at sea and the return of the indictment did not violate defendants' due process rights under the Fifth Amendment because defendants failed to show substantial prejudice resulting from pre-indictment delay, or that the government delayed the indictment to gain a tactical advantage in the case. See Order Affirming Magistrate Judge's Report and Recommendation [Etc.], July 22, 2008 (D.E. 47). Thus, the Court denied defendant's motion to dismiss for pre-indictment delay as well as defendant's motion to compel the government to produce the repatriated cuban aliens for interviews and possible testimony at trial.

Defendants Rubio and Viera, in the instant case, move for dismissal of the indictment for pre-indictment delay on facts very similar to those in Sosa. Here, defendants argue that the seven month delay between the alleged smuggling events and the return of the indictment prejudiced their defense because all 34 of the Cuban aliens allegedly aboard their vessels had been repatriated to Cuba making them unavailable for interview as potential witnesses for the defense. Defendants especially complain about

5

the repatriation of Yaneisy Rangel who stated that they were rescued at sea "by chance" which, defendants' claim, supports their theory of defense in this case. Defendants argue that the government's actions in repatriating the 34 aliens to Cuba and "delaying" the indictment for seven months violates their rights under the due process clause of the Fifth Amendment and the compulsory clause of the Sixth Amendment as explained in *Valenzuela-Bernal*, 458 U.S. 858 (1982), and *United States v. Avila-Dominguez*, 610 F.2d 1266 (5th Cir.) *cert. denied*, 449 U.S. 887 (1980).

The undersigned has already outlined applicable law in this type of situation in the *Sosa* case. In brief summary, a defendant's assertion of pre-indictment delay must be analyzed under the due process clause of the Fifth Amendment. *See Valenzuela-Bernal, supra,* and *United States v. McDonald*, 456 U.S. 1 (1982). To establish a due process violation based on pre-indictment delay a defendant must show that the reason for the delay "violates our fundamental conceptions of justice." *United States v. Hayes*, 40 F.3d 362, 365 (11th Cir. 1994) (*quoting United States v. Lovaco*, 431 U.S. 783, 790-91 (1977)). In this circuit, a defendant must show that he suffered substantial prejudice as a result of the delay, and that the delay was the "product of deliberate action by the Government to gain a tactical advantage." *Stoner v. Graddick*, 751 F.2d 1535, 1540 (11th Cir. 1985); *see also United States v. Foxman*, 87 F.3d 1220, 1222 (11th Cir. 1996). In addition, the loss of potentially useful evidence by actions of the government does not constitute a denial of due process unless the defendant can show that the government acted in bad faith. *United States v. Brown*, 9 F.3d 907, 910 (11th Cir. 1993) (*citing Arizona v. Youngblood*, 488 U.S. 51, 58 (1999)).

6

With respect to the Sixth Amendment, a defendant "must make it a plausible showing that the testimony of the deported witness would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *Velenzuela-Bernal*, 458 U.S. at 859. While a defendant cannot be expected to render a detailed description of lost testimony in this situation, he continues to bear the burden of making some showing of materiality of the lost evidence. *United States v. Schaefer*, 709 F.2d 1383, 1386 (11th Cir. 1983) (a defendant must "show some reasonable basis to believe that the deported witness would testify to material and favorable facts").

## A. No Fifth Amendment Violation

Reviewing the stipulated facts, the undersigned finds no violation of the Fifth Amendment due to pre-indictment delay under the two prong test set forth in *Stoner* and *Foxman*. First, as in the *Sosa* case, defendants have failed to establish actual or substantial prejudice as a result of pre-indictment delay. As noted above, defendants argue prejudice due to the repatriation of the Cuban migrants aboard their vessels prior to their indictment, which prevented interviews of these potential "witnesses." Defendants, argue in particular the return of one Cuban migrant, Yaneisy Rangel, who apparently stated that they were "saved by chance" from a leaking vessel before interdiction by the United States Coast Guard.

1. <u>No substantial prejudice</u>

While Rangel's alleged statement may coincide with Rubio's "rescue at sea" defense,[4] the undersigned finds that the statement is immaterial and not necessarily favorable to his defense.[5] The government has offered a detailed proffer of evidence contradicting a "rescue at sea" defense. See Gov.'t resp., pgs. 2-3. Specifically, the government proffers that a Customs surveillance aircraft first observed defendants' vessels traveling together toward Florida without operating lights in the early morning hours of October 3, 2007. When approached by the CPB and Coast Guard vessels, defendants' vessels separated, reversed direction, and traveled away from Florida at a high rate of speed. Following a chase and apprehension by law enforcement officials, Viera and co-defendant Carmenate admitted their intent to smuggle the 34 immigrants into the United States with the assistance of Rangel and Hernandez. Viera and Carmenate provided details of their planned smuggling trip from the Bahamas to Florida. At some point, Viera claims to have called for assistance from Rangel and Hernandez who then

---

[4] The undersigned notes that co-defendant Viera allegedly admitted to the subject charges in the indictment during the post-arrest interview and never claimed to having simply rescued the Cuban migrants at sea.

[5] Here, as in *Sosa*, the undersigned only assumes the admissibility of Rangel's statement if offered at trial for purposes of this motion. The government agues that this statement would be irrelevant under any circumstances because proof of defendants' intent to commit the indicted crimes does not depend on the subjective thoughts of Rangel or any other of the Cuban migrants prior to their being picked up at sea in Rubio's vessel. Thus, the undersigned makes no ruling on the admissibility of Rangel's alleged statement but finds above that the statement, if offered at trial, would be immaterial to a "rescue at sea" defense.

rendezvoused with their vessel and took 17 cuban migrants aboard their boat and headed toward the United States.

Rangel's statement, even if available at trial, would not be material to Rubio's defense. At most, the statement relates only to the circumstances preceding Rubio's involvement in the smuggling adventure when Rangel and the other Cuban migrants first boarded Viera's vessel. While Rangel might have thought that she was "saved by chance" from her sinking vessel by Viera's vessel, such a thought is largely irrelevant and immaterial to Rubio's intent in taking Rangel and the other Cuban migrants aboard their vessel as requested by Viera and Carmenate. Here, the government must prove defendants' intent to violate United States law, and not disapprove Rangel's, or any other migrant's subjective beliefs about any "rescue at sea." Thus, the "loss" of this statement by Rangel or possibly by other Cuban migrants, does not result in any actual or substantial prejudice to the defense.

2. No bad faith

Moreover, defendants have failed to show that the seven month period between their interdiction at sea and return of the indictment was a deliberate delay by the prosecution to gain a tactical advantage in this case. Here, as in *Sosa*, defendants merely argue, without any factual or evidentiary support, that the government intentionally waited to bring criminal charges against them to allow for the repatriation of the Cuban migrants to Cuba in order to prevent possible defense interviews or the preservation of evidence favorable to the defense. Once again, defendants argue a change in prosecution procedures since 2004 when defense counsel was able, in certain cases, to conduct such

interviews in similar cases.

Once again, the undersigned finds no substance or factual support for this argument.  Defendants' argument, based on prior cases filed in 2004 and an alleged change in prosecution procedures, is far too speculative and totally lacking in any real proof of an intentional design by the government to gain a tactical advantage in these types of cases.  The Supreme Court has long ago noted the government's duel and often conflicting obligations to promptly repatriate undocumented aliens to their native countries; and to prosecute those responsible for this type of crime.  See *Valenzuela-Bernal, supra* at 864-65.  The government again argues the unique situation involving undocumented Cuban aliens, who, under present policy, are permitted to remain in the United States if they reach its shores.  Given these circumstances, without more from defendants, the undersigned finds no evidence to bad faith by the government resulting any intentional "delay" between interdiction and indictment.

B. <u>No Sixth Amendment Violation</u>

Defendants also argue that the seven month pre-indictment "delay" also violated the compulsory process clause of the Sixth Amendment due to the loss of potential witnesses.  Defendants recognize that they "must make a plausible showing that the testimony of the deported witnesses would have been material and favorable to [their] defense" to establish a Sixth Amendment violation.  *Venezuela-Barnal*, 458 U.S. at 859.  Defendants again argue the lost statement of Yaneisy Rangel as well as possible similar statements by other repatriated Cuban nationals to support their position.

The undersigned has already found that Rangel's statement, and any similar statements of other repatriated Cuban aliens, is not material or favorable to the defense for purposes of the Fifth Amendment. For the same reasons, the undersigned finds that these statements are equally immaterial under the compulsory clause of the Sixth Amendment. Therefore, the undersigned finds no Sixth Amendment violation here.

C. <u>Motion to Compel Production of Witnesses</u>

Alternatively, defendants argue, as an alternative to dismissal, that the government be required to produce Yaneisy Rangel and the other repatriated Cuban aliens for defense interviews and possible preservation of testimony for trial. Defendants offer no authority for such relief other than the same arguments made for the dismissal of the indictment. This Court has recently rejected the same request in the *Sosa* case. Finding no basis for dismissal of the indictment, the undersigned also finds no basis for any order requiring the government to produce any of the repatriated Cuban aliens, even if available, at this time.

## **SUMMARY**

In summary, the undersigned finds no violation of defendants' Fifth or Sixth Amendment rights resulting from any pre-indictment delay in this case. Accordingly, the undersigned recommends that Defendant's Amended Motion to Dismiss Indictment Due to Pre-Indictment Delay or Alternatively to Compel the Government to Produce Witnesses be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable James Lawrence King, United States District Judge, within ten (10) days of receipt. See 28 U.S.C. §636(b)(1)( c); *United States v. Warren*, 687 F.2d 347 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983); and *Hardin v. Wainwright*, 678 F.2d 589 (5th Cir. Unit B 1982); *see also Thomas v. Arn.*, 474 U.S. 140 (1985), *reh. denied*, 474 U.S. 1111 (1986).

RESPECTFULLY SUBMITTED in Miami, Florida, this ___26th___ day of August, 2008.

Ted E. Bandstra
Chief United States Magistrate Judge

Copies furnished to:

Honorable James Lawrence King
All counsel of record